[Cite as *MacDonald v. Shaker Hts. Income Tax Bd. of Rev.*, 2014-Ohio-708.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| William E. MacDonald, III, et al., | : | |
| Appellants-Appellees, | : | |
| | : | No. 13AP-71 |
| v. | : | (BTA No. 2008-K-1883) |
| City of Shaker Heights Income Tax Board of Review et al., | : | (REGULAR CALENDAR) |
| | : | |
| Appellees-Appellants. | : | |
| | : | |

D E C I S I O N

Rendered on February 27, 2014

*Baker & Hostetler LLP*, and *Christopher J. Swift*, for William E. MacDonald, III and Susan MacDonald.

*William M. Ondrey Gruber*, for City of Shaker Heights and Robert Baker.

*Barbara A. Langhenry*, Director of Law, and *Linda L. Bickerstaff*, for amicus curiae city of Cleveland.

*Shana F. Marbury*, for amicus curiae The Greater Cleveland Partnership; and *Linda Woggon*, for amicus curiae Ohio Chamber of Commerce.

APPEAL from the Ohio Board of Tax Appeals

KLATT, J.

{¶ 1} Appellants, City of Shaker Heights, Robert Baker, Tax Administrator, and Regional Income Tax Agency, appeal from a decision and order of the Board of Tax Appeals ("BTA") finding that the supplemental executive retirement plan ("SERP") of

appellee, William E. MacDonald, III, constituted a pension benefit that was not subject to tax by the city of Shaker Heights. Because the BTA's decision is not unreasonable or unlawful, we affirm.

**Facts and Procedural History**

{¶ 2} The relevant facts in this case are undisputed. MacDonald was employed by National City Corporation ("National City") for over 38 years. MacDonald was a resident of the city of Shaker Heights until December 27, 2006. On December 31, 2006, MacDonald retired from his employment at National City. At the time of his retirement, MacDonald was vice chairman of National City and he qualified for benefits under National City's qualified retirement plan and SERP. The SERP is a nonqualified deferred compensation plan that was intended to supplement the qualified retirement plan.

{¶ 3} MacDonald received his benefit from the qualified plan and the SERP in the form of a joint and survivorship annuity measured by the joint lives of MacDonald and his wife, appellee, Susan MacDonald. The MacDonalds began receiving monthly annuity payments in 2007. Those payments will cease upon the death of the last surviving spouse. MacDonald received no 2006 payments under the SERP. However, at the time of MacDonald's December 31, 2006 retirement, the present value of his SERP benefit became fixed and determinable.

{¶ 4} The National City SERP was unfunded before MacDonald's retirement and did not represent a salary deferral. Rather, the SERP, in conjunction with the qualified plan, provided an income replacement ratio of approximately 60 percent of pre-retirement income as a benefit upon retirement, after taking into account the other benefits receivable by MacDonald including social security.

{¶ 5} The MacDonalds jointly filed their 2006 city income tax return for Shaker Heights. The present value of MacDonald's SERP benefit not previously reported was included in box 5 of their 2006 form W-2 entitled "Medicare, wages and tips," and totaled $14,566,611. The MacDonalds calculated their 2006 city income tax liability based upon the amount reported in box 18 of MacDonalds' form W-2, entitled "local wages, tips, etc." Box 18 indicated an amount of $5,459,597.

{¶ 6} The Regional Income Tax Agency, acting as Shaker Height's tax administrator, issued a notice to the MacDonalds indicating that their 2006 municipal tax

liability would be calculated based on the value listed in box 5 of his form W-2 ($14,566,611), rather than the amount listed in box 18 ($5,459,597). Shaker Heights sought to tax in 2006 the present value of the future monthly payments to the MacDonalds under the SERP. This determination by the tax administrator significantly increased the MacDonalds' municipal tax liability. The MacDonalds contended that the SERP benefit was a pension, and therefore, exempt from municipal taxation pursuant to the Codified Ordinances of the City of Shaker Heights ("C.O".) 111.0901. They appealed the tax administrator's determination to the Shaker Heights Income Tax Board of Review ("board of review").

{¶ 7} The matter proceeded to hearing before the board of review. The parties were afforded the opportunity to call witnesses, submit evidence, and argue their respective positions. The board of review found that (1) the SERP benefit was not a pension as that term is used in the city's income tax ordinance; (2) the SERP benefit was not a pension payment or proceeds from a pension as these terms are used in the city's income tax ordinance; and (3) the SERP benefit is not exempt from taxation under any other provision of the city's taxing ordinances.

{¶ 8} The MacDonalds appealed the board of review's decision to the BTA pursuant to R.C. 5717.011. The record of proceedings before the board of review was filed with the BTA. After the BTA allowed discovery, the matter proceeded to hearing. Over appellants' objection, the BTA permitted the parties to introduce additional evidence at the hearing. The BTA reversed the decision of the board of review, finding that the SERP benefit was a pension, and therefore, not subject to municipal tax under C.O. 111.0901.

{¶ 9} Appellants appeal, assigning the following errors:

> [I.] The Board of Tax Appeals erred when it found that the amounts attributable to the Appellee's, William E. MacDonald III ("MacDonald"), non-qualified deferred compensation plan constitute a pension benefit and are not subject to tax by the City of Shaker Heights as a "pension".

> [II.] The Board of Tax Appeals erred in allowing the introduction of new evidence and new witnesses, and conducting a de novo review of the decision of the Shaker Heights Municipal Income Tax Board of Review, when the Appellees, William E. MacDonald, III and Susan W. MacDonald were afforded every opportunity to introduce

witnesses and testimony before the Shaker Heights Municipal
Board of Review.

**Legal Analysis**

{¶ 10} An appellate court reviews a decision of the BTA to determine whether it is reasonable and lawful. R.C. 5717.04; *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 124 Ohio St.3d 481, 2010-Ohio-687, ¶ 13; *Cousino Constr. Co. v. Wilkins*, 108 Ohio St.3d 90, 2006-Ohio-162, ¶ 10. "It is well settled that [an appellate] court will defer to factual determinations of the BTA if the record contains reliable and probative support for them." *Strongsville Bd. of Edn. v. Wilkins*, 108 Ohio St.3d 115, 2006-Ohio-248, ¶ 7; *Am. Natl. Can Co. v. Tracy*, 72 Ohio St.3d 150, 152 (1995).

**A. First Assignment of Error**

{¶ 11} Appellants contend in their first assignment of error that the BTA erred in finding that the SERP benefit constitutes a pension that is not subject to Shaker Heights municipal tax. Appellants advance three arguments to support this contention. First, appellants contend that the BTA erred when it examined whether the SERP benefit constituted a pension. According to appellants, because a benefit from a nonqualified deferred compensation plan such as the SERP is not expressly exempted from the municipal tax under C.O. 111.0901(b) and 111.0901(c), it is by definition taxable. We disagree.

{¶ 12} State law permits a municipality to tax "qualifying wages." R.C. 718.01(H)(10). Qualifying wages include amounts attributable to a nonqualified deferred compensation plan unless the municipality has exempted that compensation from taxation. The city of Shaker Heights has exempted pensions from its municipal tax. C.O. 111.0901(b) and (c). The term "pensions" is not defined in Shaker Heights municipal code. The MacDonalds argued before the board of review and the BTA that a benefit from a nonqualified deferred compensation plan such as the SERP is a pension, and therefore, its value must be deducted from the qualifying wage. Nothing in Shaker Heights municipal code or in state law clearly indicates whether or not benefits from a nonqualified deferred compensation plan, such as the SERP at issue here, is a pension. Therefore, we reject appellants' argument that the BTA erred when it examined whether the SERP benefit constitutes a pension for purposes of C.O. 111.0901(c).

{¶ 13} In their second argument, appellants contend that the pension exemption contained in C.O. 111.0901(b) and (c) is limited to payments made to a retired employee from the employer after retirement. Because the present value of the SERP benefit listed in box 5 of the MacDonald's 2006 form W-2 did not reflect payments received by MacDonald in 2006, appellants contend that the SERP benefit is not a pension, and therefore, it is taxable as qualifying wages. In support of this argument, appellants primarily rely on the testimony of Mark Taranto, the assistant tax director for the Regional Income Tax Agency. Mr. Taranto testified that the common usage and interpretation of the term pension as used in the city's income ordinance is a payment after retirement.

{¶ 14} However, the BTA relied upon other testimony presented at the hearing indicating that benefits from a nonqualified deferred compensation plan, such as the SERP at issue, is a pension. Patricia Edmond, former executive vice president at National City, testified that the SERP was intended to provide a pension. Edmond also stated that National City classified its SERP as a pension in its 2006 annual report to shareholders. William Dunn, a senior benefits partner at PriceWaterhouseCoopers testified that National City's SERP was a pension. In addition, professor Ray Stephens, an accounting expert, testified that the reporting of National City's SERP as a pension was proper under general accepted accounting principles ("GAAP").

{¶ 15} Both appellants and the MacDonalds presented evidence and advanced arguments that supported their respective positions. The BTA examined all the evidence presented at the hearing and reflected in the record. Based upon this evidence, the BTA concluded that the MacDonalds' SERP benefit listed in box 5 of their 2006 form W-2 is a pension and, therefore, that amount must be deducted from the MacDonalds' income in calculating the taxable qualifying wage. This determination is not unreasonable or unlawful.

{¶ 16} Appellants also contend that the BTA's decision conflicts with *Wardrop v. Middletown Income Tax Review Bd.*, 12th Dist. No. CA2007-09-235, 2008-Ohio-5298. Although the *Wardrop* case also involved the issue of whether a SERP benefit was taxable under Middletown's ordinance, the language of the ordinance was substantially different than the Shaker Heights ordinance at issue here. In *Wardrop*, the Middletown

ordinance expressly stated that earnings designated as "deferred compensation" were taxable. *Id.* at ¶ 36. In addition, the Middletown ordinance expressly distinguished tax-exempt "pensions" from taxable "earnings designated as deferred compensation." *Id.* at ¶ 38. Because the SERP plan at issue in *Wardrop* described itself as a "deferred compensation arrangement" and because Middletown's ordinance expressly imposed a tax on earnings designated as deferred compensation, the appellate court affirmed the trial court's judgment that the SERP payments were not exempt from municipal taxation. These facts are in marked contrast to those presented in this case. Here, the Shaker Heights ordinance does *not* expressly tax deferred compensation. Moreover, *Wardrop* involved an R.C. Chapter 2506 appeal—not an appeal pursuant to R.C. Chapter 5717. For the reasons discussed in connection with appellants' second assignment of error, there are significant differences between these two avenues of appeal. For all these reasons, we find *Wardrop* distinguishable, and therefore, unpersuasive.

{¶ 17} In their third and final argument in support of their first assignment of error, appellants contend that the BTA should not have concluded that the SERP benefit is a pension based solely upon National City's characterization and treatment of the SERP as a pension. We disagree with appellants' characterization of the rationale used by the BTA in arriving at its decision.

{¶ 18} The BTA did not conclude that MacDonalds' SERP benefit was a pension solely because National City treated the SERP as a pension. The BTA's decision also notes the testimony of William Dunn who stated that "a pension is any plan sponsored by an employer that provides for post-retirement income that's designed to supplement their income for life." The SERP at issue meets this definition. Ray Stevens, a professor of accounting, also testified that the manner in which National City reported the SERP (as a pension) was consistent with GAAP. Lastly, the BTA noted that MacDonald's SERP benefit was not specifically funded by National City prior to MacDonald's retirement and that none of MacDonald's cash salary was deferred to fund the SERP benefit. The BTA found that all these factors supported its determination that MacDonald's SERP benefit constituted a pension. Because the BTA's decision is not unreasonable or unlawful, we overrule appellants' first assignment of error.

### B. Second Assignment of Error

{¶ 19} In its second assignment of error, appellants contend that the BTA erred by (1) holding a hearing and allowing the introduction of additional evidence and additional witnesses that could have been presented to the board of review; and (2) conducting a de novo hearing without giving deference to the board of review's decision. We disagree with both of these arguments.

{¶ 20} In support of their argument that the BTA erred by allowing the MacDonalds to present additional evidence at the hearing, appellants cite to the process for an appeal of a "final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state" to a court of common pleas. R.C. 2506.01(A). Appellants point out that in an appeal of a board of review decision to a court of common pleas, R.C. 2506.03 limits the reviewing court's authority to consider evidence outside the administrative record. However, those limitations do not exist in an appeal to the BTA pursuant to R.C. 5717.011(C). In fact, upon the application of any interested party, the BTA is required to "order the hearing of additional evidence, and the board may make such investigation concerning the appeal as it considers proper." R.C. 5717.011(C). Here, the MacDonalds requested a hearing before the BTA. Therefore, appellants' contention that the BTA erred when it permitted the introduction of additional evidence conflicts with the express language in R.C. 5717.011(C). The BTA did not err by permitting the introduction of additional evidence.

{¶ 21} Appellants also contend that the BTA erred by conducting a de novo hearing without giving deference to the board of review's decision. In essence, appellants contend that the BTA failed to apply the correct standard of review. Again, we disagree.

{¶ 22} Pursuant to R.C. 5717.011(C), the BTA may hear an appeal based solely upon the record and any evidence considered by the administrative body below, or upon application of any interested party, it must set a hearing, permit the introduction of additional evidence, and "make such investigation concerning the appeal as it considers proper." *Id.* The statute does not set forth a standard of review.

{¶ 23} Appellants argue for a very deferential standard of review for R.C. 5717.011 appeals by again looking to appeals from a municipal taxing authority to a court of common pleas pursuant to R.C. Chapter 2506. Although a court of common pleas may hold a hearing in an R.C. Chapter 2506 appeal, its review must be confined to the transcript of the administrative proceeding unless the appellant satisfies one of the conditions contained in R.C. 2506.03. In addition, R.C. 2506.04 sets forth the standard of review that the common pleas court must apply in deciding the appeal. R.C. 2506.04 provides:

> If an appeal is taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, *the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.* Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code.

(Emphasis added.)

{¶ 24} However, because R.C. 2506.03 and 2506.04 contain significant provisions not in R.C. 5717.011, appellants' reliance on these statutes, and case law involving R.C. Chapter 2506 appeals, is misplaced. As previously noted, R.C. 5717.011 contains no provision that limits the BTA's review to the record developed in the administrative proceedings below when a hearing is requested. There is no provision in R.C. 5717.011(C) that suggests the BTA must give any deference to a board of review decision. The BTA's authority is not limited by an express standard of review. Moreover, deference to a board of review decision is illogical when the BTA hears evidence not presented to the board of

review in conducting its own adjudication of the appeal.[1] It is not this court's role to second-guess the state legislature's policy reasons for establishing two different appeal mechanisms for board of review decisions. We note that the appeal provided pursuant to R.C. 2506.01 is expressly in addition to any other remedy or appeal provided by law. R.C. 2506.01(B). Because the BTA did not err when it permitted the MacDonalds to introduce additional evidence at the hearing and when it considered that evidence in reaching its decision, we overrule appellants' second assignment of error.

{¶ 25} Having overruled appellants' two assignments of error, we affirm the order of the BTA.

*Order affirmed.*

O'GRADY, J., concurs.
TYACKS, J., concurs in part and dissents in part.

TYACK, J., concurring in part and dissenting in part.

{¶ 26} I respectfully concur in part and dissent in part.

{¶ 27} Most of the facts in this case are not in dispute. William E. MacDonald, III ("MacDonald"), was a resident of the city of Shaker Heights until December 27, 2006. MacDonald had been employed by National City Corporation for 38 years until his retirement on December 31, 2006. MacDonald was vice-chairman and qualified for benefits under the company's Non-Contributory Retirement Plan and Supplemental Executive Retirement Plan ("SERP"). MacDonald elected to receive SERP benefits beginning in 2007 in the form of a joint and survivor annuity that will cease upon the death of MacDonald and his wife. The value of MacDonald's SERP benefit, that had not been previously been reported, was included in Box 5 of his 2006 Form W-2 which totaled $14,566,611. Mr. and Mrs. MacDonald filed their 2006 city income tax return with Shaker Heights, calculating their tax liability on the amount reported in Box 18 of

---

[1] For these same reasons, we respectfully find the dissent's reliance upon *AT&T Communications of Ohio, Inc. v. Lynch*, 132 Ohio St.3d 92, 2012-Ohio-1975 and *Tetlack v. Bratenahl*, 92 Ohio St.3d 46 (2001) to be misplaced. Both cases involved R.C. Chapter 2506 appeals. In addition, we did not hold that appellants had the burden of proof at the hearing before the BTA. Rather, we held that the BTA did not act unreasonably or unlawfully in finding that the MacDonalds satisfied their burden in establishing that the SERP benefit was a pension.

MacDonald's W-2 form which totaled $5,459,597.84. It is not disputed that the SERP is a nonqualified deferred compensation plan.

{¶ 28} The Regional Income Tax Agency ("RITA"), acting as Shaker Heights' tax administrator, issued a notice to MacDonald that his municipal tax liability would be calculated based on Box 5 of his W-2. MacDonald appealed to the Shaker Heights Income Tax Board of Review ("Shaker Heights Board") which is a municipal board of appeal ("MBOA"), arguing that the SERP was a pension and was exempt from municipal taxation.

{¶ 29} The Shaker Heights Board concluded that the amount in Box 5 that was attributable to MacDonald's SERP was not a pension and had not been exempted by Shaker Heights' Code of Ordinances 111.0901 and therefore is taxable as it is found in Box 5 of MacDonald's W-2. The MacDonalds appealed to the BTA, which reversed and found that the SERP payments constitute a pension and are not subject to taxation. Appellants, Shaker Heights et al., then timely appealed to this court.

{¶ 30} Courts reviewing a BTA decision must consider whether the decision was "reasonable and lawful." *Cousino Constr. Co. v. Wilkins*, 108 Ohio St.3d 90, 2006-Ohio-162, ¶ 10. An appellate court will reverse a BTA decision that is based upon an incorrect legal conclusion. *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231 (2001). But "[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations," this court will affirm them. *Am. Natl. Can Co. v. Tracy*, 72 Ohio St.3d 150, 153 (1995).

### The Board of Tax Appeals did not follow the proper standard of review

{¶ 31} Appellants' second assignment of error asserts that the BTA improperly conducted a de novo review of the Shaker Heights Board's decision and improperly allowed the introduction of new evidence that could have been presented to the MBOA. I agree in part. The BTA did not employ the correct standard of review because the MBOA's findings are presumptively valid absent a demonstration that those findings are clearly unreasonable or unlawful. However, there is no statutory prohibition to the BTA allowing additional evidence.

{¶ 32} An appellate court's scope of review on issues of law is plenary, including the issue of whether the court or agency below applied the proper standard of review. *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, ¶ 43.

{¶ 33} Appeals from a MBOA may be made to the county's court of common pleas or the BTA, and are governed by R.C. 5717.011:

> Upon the filing of a notice of appeal with the board of tax appeals, the municipal board of appeal shall certify to the board of tax appeals a transcript of the record of the proceedings before it, together with all evidence considered by it in connection therewith. * * * The board may order the appeal to be heard upon the record and the evidence certified to it by the administrator, but upon the application of any interested party the board shall order the hearing of additional evidence, and the board may make such investigation concerning the appeal as it considers proper.

{¶ 34} R.C. 5717.011(C). There is no guidance in the statute as to the standard of review. Nor has the Supreme Court of Ohio articulated the standard of review by which the BTA is to measure appeals from a MBOA. This is mostly due to the recent enactment of R.C. 718.11 in 2003, beginning to apply for the 2004 tax year, which required the creation of a MBOA in all municipal corporations that impose an income tax. R.C. 718.11.

{¶ 35} By examining two similar tax appeal procedures to the one at bar, I believe we can determine the potential standard of review in this case. The first standard is for an appeal from the Ohio Tax Commissioner to the BTA in which "the tax commissioner's findings 'are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful.' Consequently, the taxpayer carries the burden 'to show the manner and extent of the error in the Tax Commissioner's final determination.' " *Global Knowledge Training, L.L.C. v. Levin*, 127 Ohio St.3d 34, 2010-Ohio-4411, ¶ 12, quoting *Stds. Testing Laboratories, Inc. v. Zaino*, 100 Ohio St.3d 240, 2003-Ohio-5804, ¶ 30. The second is for an appeal from a municipal board of review to a court of common pleas, which is authorized by R.C. 2506.01, and "the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04.

{¶ 36} Analyzing two cases from the Supreme Court, *Tetlak v. Bratenahl*, 92 Ohio St.3d 46, 2001-Ohio-129, and *AT&T Communications of Ohio, Inc. v. Lynch*, 132 Ohio St.3d 92, 2012-Ohio-1975, I believe we are able to determine that appeals from a municipality board of review to the BTA is most analogous to appeals from the Tax Commissioner. In *Tetlak*, taxpayer Joseph Tetlak challenged the taxable status the distributive share of his S corporation that he argued for the purposes of municipal taxation was intangible income and therefore exempt. *See Tetlak* generally. Tetlak initially filed a protest which was denied by the tax administrator of the Village of Bratenahl who stated that the distributions was income from an unincorporated business entity and therefore taxable by municipalities. *Id.*

{¶ 37} Tetlak appealed to the Bratenahl Board of Review which upheld the tax administrator's denial of Tetlak's protest. *Id.* Tetlak then filed an administrative appeal pursuant to R.C. 2506.01 in the common pleas court. The trial court found that the municipality may tax the distributions but the "determination must be supported by 'the preponderance of substantial, reliable, and probative evidence on the whole record.' R.C. 2506.04. Finding that the [tax administrator] did not make such determination, the court reversed the decision of the board of review." *Id.* at 47. The Eighth District Court of Appeals affirmed the decision and the case went before the Supreme Court. *Id.*

{¶ 38} The Supreme Court expresses, in reversing the judgment, that deference is to be given to a municipality when reviewing an income tax determination:

> The taxpayer, not the village, has the burden of proof on the nature of the income at issue. It is well settled that ' "when an assessment is contested, the taxpayer has the burden '* * * to show in what manner and to what extent * * *' the commissioner's investigation and audit, and the findings and assessments based thereon, were faulty and incorrect." ' *Maxxim Med., Inc. v. Tracy* (1999), 87 Ohio St.3d 337, 339, 720 N.E.2d 911, 913, quoting *Federated Dept. Stores, Inc. v. Lindley* (1983), 5 Ohio St.3d 213, 215, 5 OBR 455, 457, 450 N.E.2d 687, 688. Furthermore, the 'Tax Commissioner's findings are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful.' *Id.*, 87 Ohio St.3d at 339–340, 720 N.E.2d at 913–914.
>
> This reasoning is applicable at the municipal level.

*Tetlak* at 51-52.

{¶ 39} From this, I would conclude that the decisions of a MBOA are to be treated with the same deference as those of the Tax Commissioner when appealed. The Supreme Court twice uses the standards for the Tax Commissioner and specifically states that this "reasoning is applicable at the municipal level" equating the deference given to the Tax Commissioner and the hurdles required to overcome it as applicable to the Bratenahl tax administrator or the Bratenahl Board of Review. *Id.* The case at bar is analogues to the *Tetlak*; both cases examine the taxable status of a type of income by a municipality, the Bratenahl Board of Review and the Shaker Heights Board in both cases concluded that the income was taxable, both of the boards' decisions were overturned upon appeal. The difference being the municipalities' boards' decision in *Tetlak* was appealed to a common pleas court as opposed to the BTA. *Tetlak* emphasis that the taxpayer must overcome the tax assessor's findings by showing that they are faulty or incorrect and that they are presumed valid absent a showing of them being clearly unreasonable or unlawful. *Id.*

{¶ 40} *AT&T Communications* affirms that, while appeals from a MBOA to a common pleas court under R.C. 2506.01 resemble de novo proceedings, they are not de novo. *AT&T Communications* at ¶ 13. In *AT&T Communications*, a refund of the city of Cleveland's income tax was denied by the tax administrator. *See AT&T Communications* generally. AT&T appealed to the Cleveland Board of Income Tax Review which affirmed the refusal of the refund and AT&T filed an appeal pursuant to R.C. 2506.01. *Id.* Similar to *Tetlak*, *AT&T Communications* is a municipal income tax dispute in which after the MBOA affirms that administrator's findings the taxpayer appeals to the court of common pleas.

{¶ 41} The Supreme Court affirmed that the courts of common pleas exercise appellate jurisdiction: "[W]hile an appeal under R.C. 2506.01 resembles a de novo proceeding, it is not de novo. There are limits to a court of common pleas review of the administrative body's decision. For example, in weighing evidence, the court may not 'blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise.' " *AT&T Communications* at ¶ 13, quoting *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202 (1979). We find that the BTA may not conduct a de novo review of a MBOA's findings nor may they substitute their own judgment. It is the MBOA not the BTA that has the expertise in the municipalities own

taxing ordinances. There must be deference given to a MBOA's findings. The standards that must be employed and the dispositions that must be reached are more limited than relief that could be awarded pursuant to a trial, therefore the administrative appeal is more akin to an appeal than a trial. *See AT&T Communications* at 14.

{¶ 42} Examining *Tetlak* and *AT&T Communications*, I would find that in a MBOA's decision appealed pursuant to R.C. 5717.011 to the BTA, the taxpayer, not the village, has the burden of proof on the nature of the income at issue. *Tetlak* at 51. When an assessment of a tax administrator is contested, the taxpayer has the burden to show in what manner and to what extent the findings and assessments were faulty and incorrect. *Id.* Furthermore, an appeal pursuant to R.C. 5717.011(C) is not a de novo proceeding, it is more akin to an appeal than a trial, there may not be a substitution of judgment, and the MBOA's findings are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful. *See Tetlak* at 51-52; *AT&T Communications* at ¶ 13-14.

{¶ 43} Shaker Heights' second assignment of error also argues that MacDonald was precluded from introducing new evidence to the BTA that could have been introduced to the MBOA. There is no statutory basis for this argument nor any case law that suggests the BTA should be restricted in this way. The BTA is in fact required upon the application of any interested party to "order the hearing of additional evidence, and the board may make such investigation concerning the appeal as it considers proper." R.C. 5717.011(C). While a court of common pleas in an R.C. 2506.01 appeal may consider evidence outside the administrative record, that authority is limited. There is no statutory equivalent in R.C. 5717.011. *See AT&T Communications* at ¶ 13. We find the BTA is able to hear evidence in a MBOA appeal that could have been presented to the MBOA. Generally, however, it would not be in a taxpayer's interest to purposely withhold evidence from a MBOA as the MBOA's findings should be presumptively valid absent a demonstration they are clearly unreasonable or unlawful.

### *The BTA did not address the MBOA's findings or presume them as valid*

{¶ 44} Examining the BTA's decision and the Shaker Heights Board's decision, I would find that the proper standard of review was not employed by the BTA which conducted a hearing with no deference to factual findings, or interpretation of Shaker Heights' city code by the Shaker Heights Board. The Shaker Heights Board's findings are

required to be shown to be clearly unreasonable for the BTA to draw a different conclusion. This includes the reading of Shaker Heights' Code of Ordinances 111.0901 which originally found MacDonald's SERP not to be a pension and exempt from the municipal income tax.

{¶ 45} Though the BTA cites *Tetlak* in its decision, it does not accord any deference to Shaker Heights Income Tax Board of Review's findings of fact that MacDonald's SERP is not a pension. At no point does the BTA address the reasonableness of the Shaker Heights Board's findings let alone address the question whether MacDonald has demonstrated that those findings are clearly unreasonable. Instead, the BTA acted as if it were writing on a clean slate.

{¶ 46} The Shaker Heights Board concluded that the amount reported on MacDonald's W-2 attributable to his SERP was not a pension but rather an amount that had not been previously reported, "and that was, at the time of its reporting, known, fixed and not subject to forfeiture to the benefit of Appellant. It was not a pension as that term is commonly used, which is a payment of retirement benefits after retirement." Shaker Heights Board's decision, at 10. The factual determinations about the SERP lead the Shaker Heights Board to conclude that it was not a pension:

> [MacDonald] had the contractual right to SERP benefits if and when he completed his time and other requirements set out in the [National City] SERP program. Thus, with each month of service to [National City], [MacDonald], by his employee services, was "paying" for his contractual right to get those SERP benefits following his retirement.
>
> This "deferred" compensation continued to accrue in [MacDonald]'s favor until the end of 2006 when, in fact, its present value, shown in Box 5 of his W-2, was actually recognized as due and owing, though as yet unpaid and, thus, is income subject to the City's income tax.
>
> [MacDonald] chose to use that "income" to purchase a join life annuity. But [MacDonald] had the option to take the sum in cash, emphasizing that it was deferred compensation to which [MacDonald] was now entitled.

Shaker Heights Board's decision, at 11.

{¶ 47} These are some of the factual and legal conclusions of the Shaker Heights Board that must be presumed valid unless demonstrated that they are clearly unreasonable or unlawful.

{¶ 48} The BTA did not really address the conclusions of the Shaker Heights Board. Instead, the BTA stated that while the SERP "falls within the ambit of a nonqualified deferred compensation plan, we do not find such designation necessarily mandates its exclusion from the commonly accepted definition of pension." BTA's decision, at 10. The BTA then simply made the determination that the SERP was a pension. This ignored the Shaker Heights Board's conclusion that the SERP is a deferred compensation that could be used by MacDonald as proof that the SERP was not a pension.

{¶ 49} The BTA then concluded that "we need look no further than the terms of National City's SERP to discern its purpose, i.e., 'to provide for the payment of certain pension, disability and survivor benefits in addition to benefits which may be payable under other plans.' " BTA decision, at 11. This fails to address the conclusions and arguments made by Shaker Heights Board. Again, I find that the BTA did not presume Shaker Heights Income Tax Board of Review's findings as valid and did not show what demonstrates those findings to be clearly unreasonable or unlawful.

{¶ 50} The second assignment of error should be affirmed in part and overruled in part. Since the majority of this panel does not do so, to that extent, I respectfully dissent in part.

_____